*Law Offices of*

# MANSELL ENGEL & COLE

**101 PARK AVENUE**
**SUITE 665**
**OKLAHOMA CITY, OK 73102-7203**

**Steven S. Mansell**
**Mark A. Engel**
**Kenneth G. Cole**

Telephone: (405) 232-4100
Facsimile: (405) 232-4140
Toll Free: (800) 369-8452
E-mail: mansell-engel@coxinet.net

Writer's Email: markengel@coxinet.net

March 18, 2014

**VIA EMAIL ONLY**
James P. Nader
LOBMAN, CARNAHAN, BATT, ANGELLE & NADER
400 Poydras Street, Suite 2300
New Orleans, LA  70130-3425
(504) 586-9292 [O]
(504) 586-1290 [F]
Email:  jpn@lcba-law.com

|  | | |
|---|---|---|
| Re: | Insured: | Charles A. Shadid, LLC |
|  | Claim No.: | PR1200037375 |
|  | DOL: | May 31, 2013 |
|  | Your File: | 125.131880 |

Dear Mr. Nader:

I had just dictated an initial draft of the response I promised you last week when I received your email and the letter attached thereto dated March 18, 2014.  Initially, with regard to your suggestion in your email that all communications in connection with this claim be between counsel, I must reiterate what you and I discussed at Mr. Shadid's EUO.  Mr. Shadid does not have counsel for this claim and is attempting to get his insurance company to reasonably address the claim on his own.  As we discussed, I simply agreed to appear with Mr. Shadid at his EUO and to try and assist him in reasonable document production.  This was because of Aspen's outlandish and completely unjustifiable request for all kinds of documentation over a ten year period and the simple fact that I had some of the documentation in connection to an earlier claim.  Mr. Shadid and I both told you and the other two representatives of Aspen that Mr. Shadid was going to continue to try to get a reasonable response from his insurance company on his own, that you could deal directly with him with regard to the same and that I was simply there to help assist in reasonable document production.

Next, it is your letter that is full of "factually incorrect, self-serving statements" – and I would add the adjective "insulting" to your insured, Mr. Shadid.  I can assure you that this is not some "sort of posturing", or game of any kind.  Mr. Shadid has very real

EXHIBIT
tabbies
Z 4

# MANSELL ENGEL & COLE

James Nader
March 18, 2014
Page 2

---

complaints about Aspen's conspicuous breach of their duty of good faith and fair dealing – to fully investigate his claims, properly evaluate them, and promptly pay them. In fact, Aspen's bad faith seems conspicuous and their claims handling completely unjustifiable when your letter admits that they have not even concluded inspections or formulated a single estimate for repair of hail damage on roof claims that are almost a year old. Your factually incorrect and self-serving letter can try to manufacture an excuse for Aspen's current position. However, is there really any justification for this insurance company having failed to complete their inspections and to estimate and to pay for what hail damage they can see on a single one of these roofs?

Before providing a more truthful chronology of this claim, I would like to address your letter's recitation on Aspen's most recent document request. In order to color some two month delay, you simply leave out and ignore our email exchanges just last week. Does the truth cease to exist simply because it is inconvenient to the excuse you are trying to make for Aspen? I told you last week that I had met with Mr. Shadid the previous Friday and that he was going to try and get me the documents that same week and you thanked me for the response. I told you the delay in getting it to him was my fault due to litigation conflicts. Mr. Shadid provided me the documents last Friday as expected and our staff has spent yesterday and today getting those documents scanned into the computer for easy transmission to you so that the Defendant will have the benefit of the color copies. In essence, the production is occurring exactly as you and I discussed last week and yet these communications are completely omitted from your factually incorrect and self-serving recitations. It looks like it took you three weeks following the EUO to send me the letter you promised requesting a lot more documentation and it took me four weeks to address that request with Mr. Shadid. These delays are the price of attorney involvement. They do not represent any excuse for Aspen's continued delay in promptly providing their policy benefits to their insured in a matter that should not even require attorney involvement. Aspen seems to be of the opinion that as long as they submit new overburdensome, repeated requests to its insured, then that somehow suspends their obligation to promptly address and handle their insured's claim.

A true chronology of this claim starts with the fact that Mr. Shadid turned in all of these commercial properties to his insurance company in June of 2013 and he still does not even know from his insurance company which of these buildings they agree suffered tornado hail damage and which of these buildings they do not believe were damaged from the tornados. Aspen then sent Mr. Shadid their completely unjustifiable and overly broad document request that would encompass dozens of hours and thousands of dollars, if it did have any possible relevance. I have explained to Mr. Shadid that this is simply a form, overly broad document request that I have seen in connection with other Aspen commercial claims. Surely Aspen doesn't claim this form, overreaching request excuses their delay. It appears to be a standard claims technique to justify delay and not really advise the insured what is really needed to assist the

# MANSELL ENGEL & COLE

James Nader
March 18, 2014
Page 3

---

claim.  Mr. Shadid explained that the roofing surfaces for which Aspen was requesting documentation had been replaced and that he wanted to know what Aspen's adjusters had found out about storm damage from their inspection of the roofs.  Aspen's adjuster has confirmed "we observed that most, but not all, roofing surfaces have been replaced during recent years".  "We observed storm damage to some roofs which occurred at some time since the roofs were replaced.  Many roofs had no evidence of storm damage".  Just as Mr. Shadid had advised, and you and I discussed, most all of these roofs had been replaced following the catastrophic 2010 hail storm and the relevant documentation would only pertain to the roof surface that currently existed on the building and was actually being inspected for hail or wind damage to that surface from these tornados.  Now, Aspen won't even tell Mr. Shadid which roofs they found damaged and what their inspections revealed.

The insulting remark in your letter about a factually incorrect, self-serving statement from Mr. Shadid references "previously told me you would send me a copy of your inspection reports and the amount of damage you and your roofer found on these properties".  This is factually correct, documented in writing, and Mr. Shadid has every right to see the inspection reports of these adjusters and the roofers that accompanied them and any other documentation that addresses the amount of damage they may have seen in their inspection of his roofs.  That is what he made a claim for in June 2013 and that is why he asked his insurance company to come inspect all the roofs.  Now, they won't even send their current documentation for what those inspections revealed.  Your letter, after insulting Mr. Shadid, tries to sidestep the issue entirely and mischaracterize the statement by talking about "estimates".  The fact that the Defendant has not completed even a single preliminary estimate on a single one of these roofs is certainly indicative of bad faith, but it does not extinguish Mr. Shadid's complaint.  Why is it that Aspen has refused to produce the inspection reports from their adjuster and any other photographs or documentation of any kind that they have received from those roofers and their own adjuster talking about the amount of damages that they witnessed and photographed on these many commercial roofs – "roofing surfaces that had been replaced during recent years".  Still refusing to produce Mr. Shadid a single page of documentation of their own adjusters, you simply sidestep his request for these inspection reports and accuse him of factually incorrect, self-serving statements.  I would like to see Aspen finally face the fact of Mr. Shadid's long term request, in good faith, and try to provide their insured all of their documentation of what they saw and know from their inspection of these claims.  When is Aspen going to admit to Mr. Shadid which of these new roofs they concur had been damaged by the storm? When are they going to identify for Mr. Shadid which of the roofing surfaces they believe to be older so that he will know which ones to address?  When is Aspen going to advise their insured of which roofs they concluded had no evidence of damage at the time of their adjusters' inspections, so that he can have someone else look at those roofs and try to address his insurance companies denial?  Aspen cannot avoid the fact that they have refused such documentation, any reasonable information of any kind, and ignored their

# MANSELL ENGEL & COLE

James Nader
March 18, 2014
Page 4

---

insured's right to know what happened in these inspections, by simply sidestepping his request and insulting him.

The truth is that both you and the adjuster finally took the time to identify, in separate November 2013 letters, the specific information and documentation that Aspen really needed from Mr. Shadid.  Mr. Shadid produced each and every bit of this documentation that was requested by Aspen's letters at his EUO.  These were the first legitimate requests of some reasonable scope that would allow him to fully comply with what had been requested.  Mr. Shadid has previously submitted, at considerable expense, considerable documentation.  You told Mr. Shadid in November, 2013, "as was previously indicated, Aspen intends to have an engineer inspect each of the properties which are the subject of this claim following receipt of the requested information".  This promise and these inspections have never occurred and it is not Mr. Shadid's fault.  This is what he complained about in his letter.  Mr. Shadid has submitted to hours of interrogation from a lawyer, supplied all of the documentation requested in the only letters that tried to specify what was reasonably needed, and has been refused any information at all from Aspen as to what they found when they inspected these roofs many months ago.  He has every reason to be concerned about his insurance company's bad faith in addressing these claims and no reason to be insulted.

Your letter of February 7, 2014, which appears to be utilized as some excuse for Aspen's delay, again addresses documentation which you and I discussed at the EUO. I thought that we had agreed that it doesn't make sense to gather documentation or evidence of a roof that doesn't even exist on one of these buildings.  The roofing surface that Aspen insured in 2013 and that was on the building at the time of the storm is the roofing surface for which Mr. Shadid makes claim .  This was the only roof that was insured by Aspen's insurance policy.  Some of the requested documentation seems directly contrary to our discussions, i.e., "3. All photographs of the properties taken after the 2010 weather event but prior to the occurrence of any repairs to the properties." What does damage to a 2010 roof that is no longer the roofing surface on that building have to do with Mr. Shadid's 2013 tornado loss?  As Aspen has acknowledged, most all of the roofs on these buildings were replaced in recent years following the 2010 catastrophic hail storm here in Oklahoma City.  If Aspen would simply provide their documentation of their own adjusters' inspections of these roofs and which roofs they contend were not replaced after 2010, then we could consider production of documentation on those specific roofs going back further.  For the roofs that were on these buildings, again most all of which were all replaced since 2010, we are producing all of the additional information that you have requested in your supplemental request letter.

We are happy to discuss with you what else might be legitimately appropriate. However, this is not some sort of posturing or a game to work Mr. Shadid and his staff until he can be forced into some compromised resolution less than what he is entitled to

# MANSELL ENGEL & COLE

James Nader
March 18, 2014
Page 5

under his policy.   It is time for Aspen to reciprocate and provide all of their documentation and information.   It is time for Aspen to immediately conclude their re-inspections and immediately pay what they can ascertain was caused by these storms.   If the great majority of these roofs had already been replaced and Aspen knows that there is hail damage on the same, then the damage on those specific roofs might already exceed the policy limit.   There would be no need to even address the very few roofs that were not replaced in recent years.   When is Aspen going to pay for the hail damage they admit they saw to new roofing surfaces months ago?   Is there really any remaining policy benefits at issue?   Mr. Shadid demands in his letter only that Aspen promptly complete the engineering inspections that you promised would occur in your November letter and promptly make him reasonable offers on any of these new roofs that they can determine where damaged by the tornados.   For any roofs that need additional information, documentation, or consideration, please identify the same.   Please do not wait for the prompt investigation, evaluation and prompt payment of all policy benefits on any building on which these can be accomplished.   Just asking for new tasks from Mr. Shadid does not excuse Aspen's failure to act and act promptly.   This is something that should be done in a matter of weeks, not months.   In fact, there is no justifiable reason for having failed to conclude the claim on a single one of these properties over this 10 month period.   It might serve Mr. Shadid and his insurance company well if the lawyers could avoid these dissertations and, instead, the insurance company could take prompt action to complete these claims as required by law.   Mr. Shadid awaits his insurance company's response.    If I can be of any additional assistance with regard to needed documentation, let me know.

Yours very truly,

MARK A. ENGEL
For the Firm

MAE/hah
cc:  Charles Shadid