|  | LOSS REPORT |
|---|---|
| Associated Claims Management Inc. 510 E. 1st Street Oakboro NC 28129 | Status |

Phone # 704-485-8975
TIN #: 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

| | | | |
|---|---|---|---|
| Reference: | Aspen Specialty Insurance Company 125 Summer Street, Suite 300 Boston, MA 02110 | Report #: 3 Catastrophe Number: 15 Policy Number: PRAAJM212 |
| Attention: | Anthony Anniello | Claim Number: PR1200037375 |
| Insured: | Charles Shadid 1901 Classen Blvd Oklahoma City, OK 73106 | Date of Loss: 5/31/2013 Type of Loss: Hail File Number: 13-11014 |

### ENCLOSURES:
Bill for Services, Summary of engineering reports, Summary of hail events, Insured's list of roof repair dates

### COVERAGE:

| | | | |
|---|---|---|---|
| Building | $5,000,000 | Eff. Dates: | From: 8/20/2012   To: 8/20/2013 |
| BPP | Included | Mortgagee: | None per insured |
| BI w/ EE | Included | Deductible: | $50,000 Hail/Wind |
| | | Co-Ins. Applies: | Yes ☐  No ☑ |
| | | Forms: | CP 00 10, CP 00 30, CP 10 30 |

### RESERVES
Building: ▮▮▮▮▮▮▮
Contents: ▮▮▮
BI w/EE: ▮▮▮
Claims Expenses: ▮▮▮▮▮▮▮

### COVERAGE ANALYSIS
This policy provides coverage for damage to the insured property due to wind and/or hail. The limit of insurance is $5,000,000, subject to the Statement of Values which specifies individual coverage limits per location. This is an RCV policy with no co-insurance requirement. The windstorm/hail deductible is $50,000.

**Coverage Issues:**

1. Pre-existing damage to some components.

2. Inadequate or improper repairs and/or maintenance on some roofs.

3. Decay and deterioration of decking and structure on some roofs.

4. Lack of storm created openings on most roofs which may have allowed water intrusion.

5. Insured's refusal to provide specifics on prior claims and major roof repairs since 2010 (following multiple hail events, claims, and settlements from storms in 2010 and 2012).

6. Multiple dates of loss within policy period.

7. Insured may have sold some of the properties since the filing of the claim.

### RISK ANALYSIS

The risk is a portfolio of 47 buildings in 25 locations. The total insured values according to the SOV a

Building  $29,375,875
Contents  $3,110,000



EXHIBIT 33

SHADID V. ASPEN 0168

BI     $2,282,137
Sign   $523,350

These are older shopping centers and retail strips located in the Oklahoma City metro area. Most buildings were built between the 1960s and 1980s, and construction is typically single-story with flat roofs. The roofs on almost all of the buildings are modified-bitumen, many of which appeared to have been replaced in the past few years following a prior insurance settlement with a prior carrier. Overall conditions of the buildings varied significantly depending on age, construction, location, and use.

Due to the size and complexity of an ITV analysis on 47 buildings, we will not address this in our reporting.

## PARTIES

The various parties to the loss are as follows:

*Named Insured:*
Charles A. Shadid, Individual
Charles A. Shadid, LLC
Charles A. Shadid, Revocable Trust
1901 Classen Blvd.
Suite 222, Victoria Bldg.
Oklahoma City, OK 73106
405-525-6671
charles@shadprop.com

Jerry Renfroe, *public adjuster*
Just Property Restoration
7509 NW 135th St.
Oklahoma City, OK 73142
405-225-7663
jerry@justpropertyrestoration.com

## EXPERTS

Aspen approved retaining EFI Global to conduct engineering evaluations of the roofs and exteriors of all the buildings. The purpose of the building evaluations was to determine actual damage which may have occurred on the reported date of loss and within Aspen's policy period, along with a historical weather analysis to determine other hail events which may have contributed to the current condition of the roofing and/or components.

Mr. Dan Heyer, P.E., VP of Engineering at EFI Global, was selected for this inspection because he had previously inspected many of the subject buildings for another carrier following the 2010 claim. His prior evaluations of many of these roofs allowed for increased knowledge regarding a past similar claim, prior conditions of many of the roofs, and a comparison of conditions over the past few years.

Mr. Dan Heyer and Mr. Luis Espino, P.E. (also with EFl Global) completed the engineering inspection on 5/10/2014. ACM was present with the engineers during this inspection. At this time of our prior report (R2), the engineers were working on their reports for each location. This was delayed because the engineers needed the insured to provide the requested information on roofing replacements following the 2010 storm so they could date and separate whether the roofing material was installed before or after the 2012 storm and claim settlement. If not, then the 2012 storm (with larger hail than on DOL 5/31/2013) may be the primary contributing factor regarding the current condition of many of the roofs. In addition, to evaluate the current claim we still need the requested documentation on prior hail claim presentations (2010 & 2012) to determine if the insured is claiming the same damages again in this claim.

On 7/8/2014, the insured provided us a list (one-page, see attachment) which indicated the date of prior roof repairs on most of the properties. This list indicated that there was some amount of roof repairs (actual scope not provided) during late-2010 and 2011. This time-frame was between the significant 5/2010 & 5/2012 hail events. This information was provided to the engineers to help them in their evaluation.

The attached *Summary of Hail Events* spreadsheet was prepared by the engineers and lists all known or likely hail events at each location since 2006. It is important to note that during Aspen's policy period (8/20/2012-8/20/2013) there were multiple dates of hail events which may have impacted various properties.

**Engineering Reports:** Following receipt of the list of prior roof repairs from the insured, the engineers prepared 25 reports to address the various properties. ACM forwarded copies of the reports to Aspen and to counsel. We have reviewed all the reports and prepared a brief summary (see attached "*Summary of Engineering Reports*"). **Our review and commentary of the engineering reports is addressed in the "Adjuster Remarks" section below.**

The total expected engineering budget was $100 - $115K. Currently, approximately $84K has been paid for

engineering. Limited additional engineering services may be required, depending on whether further evaluation is needed.

Daniel W. Heyer, P.E.
Vice President of Engineering
EFI Global, Inc.
3305 Breckinridge Blvd., Suite 116
Duluth, Georgia 30096
770-925-9600
Daniel_Heyer@efiglobal.com

**CAUSE AND ORIGIN**

The claim was reported as due to wind and hail damage on 5/31/2013.

**ADJUSTER REMARKS**

**PRIOR REPORTING:**

*First Report (R1):* This loss was received on 8/16/2013 and we contacted the insured, Mr. Charles Shadid. The insured is an attorney, real estate developer, and commercial property owner/manager. The claim was initially reported as storm damage to one building, Lakeshore Shopping Center. The claim quickly evolved from one building to all 47 buildings on the policy. The insured advised that all of his buildings had new roofs following an insurance settlement from a 2010 wind/hail storm. We mailed out a basic information request letter to gather general data on repairs due to this loss, estimates, acquisition dates, prior major exterior repairs, prior policies, prior claims, and any settlement documents.

Following this, the insured advised that he retained a public adjuster, Mr. Jerry Renfroe with Just Property Restoration. Mr. Renfroe advised us that he had never handled a commercial loss before (only residential), and that he had never worked with the insured before. His contract amount was 1% and our perception was that the insured is driving the claim and using this PA as the point-man for producing his estimate, visiting the properties, meeting with adjusters/engineers, etc.

ACM inspected all 47 buildings in 25 locations at the end of September 2013. During our inspections, we observed that most buildings did have fairly new modified-bitumen roofing; however, some roofs were only partially replaced and some roofs appeared to have roofing that may have preceded the 2010 storm. This raised questions on what was paid for in prior claims versus what was actually replaced on certain buildings. As is typically seen in this region, there was an accumulation of hail impacts to many rooftop components such as HVAC units, AC fins, vent caps, flashing, etc. Most of these items did not appear to have been replaced following prior insurance claims or repairs, and yet the insured was claiming all damage as due to this date of loss. Our preliminary research on hail in the past 10 years in Oklahoma County indicated over 50 hail events with 1-inch or larger hail. Our general observations indicated there is hail damage on some newer roofs, talking points on other roofs, and no hail damage to many roofs. The insured presented a loss estimate of $10.7M to include what appeared to be total losses for all roofs and rooftop components on all buildings.

We recommended an engineering evaluation of all properties to determine existence or degree of damage at varying locations, pre-existing damages, and careful forensic weather event analysis to determine which properties may have been in the path of multiple hail storms in the past several years. Written communication to/from the insured included:

· 9/4/2013: Initial information/documentation request from ACM.

· 9/23/2013: Insured's reply to info/doc letter.

· 10/10/2013: Insured's settlement demand. This included his submitted SPOL and his repair scope of $10,706,802.

· 11/4/2013: ACM sent a reservation-of-rights (ROR) letter and request for outstanding information/documentation previously requested but not yet received. This restated our request for prior settlement documents, previous repairs made, and specific repairs/estimates due to this date of loss. There were problems with the insured's submitted POL. We explained these issues and advised that Aspen did not have enough information to accept the POL as presented. This letter also put the insured on notice of an EUO which would be scheduled upon receipt of the requested information.

*Second Report (R2):*

**Examination Under Oath (EUO):** Following our prior report, Aspen retained the counsel of attorney Jim Nader with *Lobman, Carnahan, Batt, Angelle & Nader*. An EUO of the insured occurred on 1/16/2014 at the insured's office in Oklahoma City. The purpose of the EUO was to find out more about the insured, his knowledge and involvement in the loss presentation, issues related to the current claim, and prior claims on subject properties. The parties present at the EUO included:

- Charles Shadid, *insured*
- Mark Engel, *insured's counsel, Mansell & Engel*
- Jim Nader, *Aspen's retained attorney conducting the EUO*
- Jonna Holm, *Aspen claims examiner*
- Wayne Marks, *ACM General Manager*

The primary findings of the EUO pertained to:

- Background on insured regarding age, health, career
- Relationship with agent (20 years with agent)
- Significant prior losses resulting in approximately $11M in insurance proceeds since 2007
- Current litigation suits pending on two prior hail claims (2010 & 2012 storms)
- Alamo Construction Company is the primary repair vendor for all properties
- Insured used public adjusters in prior claims, retained a new PA for this claim
- Insured's position, involvement, and authority within his company

**Inspection:** As reported in the *Experts* section above, Mr. Dan Heyer, P.E., VP of Engineering at EFI Global, was selected for this inspection because he had previously inspected many of the subject buildings for another carrier following the 2010 claim. The inspection occurred during the first full week of May 2014.

ACM was present during the engineers' roof inspections and also performed interior inspections. We were able to access and document approximately 50% of the total interior space covered by the policy. This allowed for a representation of the general condition of the various buildings, and more importantly, it allowed us to correlate interior ceiling stains with observed roof conditions.

Prior to our inspection, the insured provided ACM documentation related to emergency roof repairs around the DOL, along with other roof repairs since that time. During our inspection, concerns were raised regarding the actual existence and/or scope of some of these stated repairs. We are currently reviewing our inspection data to determine if the claimed repairs correspond appropriately to our inspection observations.

Another issue that we became aware of during our inspection is that the insured may have sold some of the properties since the filing of the claim. At one retail strip (Indiana Shops), three separate tenants confirmed that the property had recently been sold; a tenant provided the name and contact information of that buyer. On another building, a tenant reported that he thought the building had been sold several months prior, however he was unable to confirm this. ACM has requested that the insured advise whether he still owns all the properties on the policy. We may need to check local property records, however it often takes many months before public records are updated following a transfer of ownership.

**Correspondence:** Throughout this claim, there has been an excessive amount of formal letters back-and-forth between the insured, his counsel, ACM, and Jim Nader. The insured has provided some of the information we requested, but he has not provided the single most important information that we have requested related to recent major roof repairs. This is very important because it would significantly help ACM and the engineer in dating when new roofing was installed which would separate old vs. new damage (primarily related to the 2012 hail event which resulted in an undisclosed and confidential settlement). In addition, to evaluate the current claim we still need the requested documentation on prior hail claim presentations (2010 & 2012) to determine if the insured is claiming the same damages again in this claim.

SHADID V. ASPEN 0171

Attached to report #2 were many letters between the parties involved in this claim. The insured often states that he has cooperated with us in the investigation of the claim and provided lots of information related to the properties. His letters assert that we are acting in bad faith. He also submitted a formal information-documentation request letter to ACM, patterned after our letter to him. Our reply letters to the insured have advised him of the reasons why we are asking for the specific information related to prior major roof repairs and other similar issues.

**Summary:** The engineers are working on preparing their reports, however this effort is hindered by the insured's refusal to provide the requested information on major roof repairs and prior claim presentations. Receipt of this information would allow the engineers to more accurately know which specific hail events may have impacted the buildings, thus separating damages that may have occurred before or during Aspen's policy period. ACM will continue to work with the carrier, counsel, the engineers, and the insured to either resolve this or to consider an alternative course of action.

### CURRENT REPORTING:

On 7/8/2014, the insured provided us a list (one-page, see attachment) which indicated the date of prior roof repairs on most of the properties. This list indicated that there was some amount of roof repairs (actual scope not provided) during late-2010 and 2011. This time-frame was between the significant 5/2010 & 5/2012 hail events. This information was provided to the engineers to help them in their evaluation.

Following receipt of the list of prior roof repairs from the insured, the engineers prepared 25 reports to address the various properties. ACM forwarded copies of the reports to Aspen and to counsel. We have reviewed all the reports and prepared a brief summary (see attached "*Summary of Engineering Reports*").

**Summary of 25 Engineering Reports:** In general, there was likely hail of up to a maximum possible size of around one-inch (0.75 - 1.1-inches) at 22 out of the 25 locations; no hail is expected to have occurred at the remaining three locations. The engineering reports state that hail of less than one-inch would not be expected to cause any damage to viable commercial roofing systems. Where hail of up to one-inch likely occurred, the engineer typically attributed minor impact marks which resulted in localized granule loss. No damage to the roofing membrane was found, and the observed granule loss is minor enough to ignore, according to the engineer. No negative effect to the life-span of the roofing is believed to be caused by hail on the DOL of 5/31/2013.

Historical hail event research by the engineer indicates that multiple other hail events occurred since the roof repairs were done following the large 2010 claim and settlement. These other events were often associated with potentially larger hail which would have had a more important contributory effect on the roofs than from the claim DOL 5/31/2013.

**Commentary:** The most significant prior hail event is the 5/29/2012 loss which had potential hail of about 1.5-2.4-inches at many of the properties. The insured made a claim for the affected properties on this DOL. We believe that there was likely a significant settlement, however the insured will not provide any requested information on this loss due to a reported confidentiality agreement in the settlement. As such, we expect that many of these roofs were impacted, presented, and settled in the 2012 claim. Since they had been partially repaired following the 2010 claim, these properties were likely not repaired following the 2012 settlement and were presented again as part of the current 5/31/2013 claim. It seems reasonable to conclude that the 2012 loss has already been paid for and that much of the observed impact marks or granule loss is primarily from that event. However, other hail events, including some in Aspen's policy period, may have impacted these properties.

**Current Status:** Following your review of this report, Aspen, ACM, and counsel ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ The insured and agent are awaiting a decision on Aspen's evaluation of the loss.

### SALVAGE AND SUBROGATION
We do not anticipate significant salvage opportunity in this claim. We will advise if this changes.

### FUTURE ACTIVITIES
At this time, we expect our future activities to include:

1. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

2. Proceed forward as necessary to work towards claim resolution.

**RECOMMENDATIONS:**

Following your review of this report, █████████████████████████████████████

Please diary your file for 60 days, at which time we will provide an updated report.

Please contact us if you have any questions or concerns regarding this claim. Thank you for the opportunity to assist you.

_____           12/17/2014
Ken Smith                                                    Date

SHADID V. ASPEN 0173