IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CHARLES A. SHADID, L.L.C., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-15-595-D |
| ) | |
| ASPEN SPECIALTY INSURANCE ) | |
| COMPANY, ) | |
| ) | |
| Defendant. ) | |

# **O R D E R**

Before the Court is Defendant Aspen Specialty Insurance Company's Motion for Summary Judgment [Doc. No. 39], filed pursuant to Fed. R. Civ. P. 56. Defendant seeks a judgment in its favor on all claims asserted in the Second Amended Complaint [Doc. No. 8] and, alternatively, seeks a determination of issues regarding recoverable damages. Plaintiff Charles A. Shadid, L.L.C. has responded in opposition to the Motion, and Defendant has replied. With permission, Plaintiff has also filed a supplemental exhibit of deposition testimony discussed in its brief, for which the transcript was unavailable when the brief was filed.[1] The Motion is fully briefed and ripe for decision.

Plaintiff brings this diversity action to recover damages for breach of contract and breach of the insurer's duty of good faith and fair dealing related to a commercial insurance policy and an insured loss from a May 31, 2013 tornado allegedly affecting 20 properties.

---

[1] To the extent Plaintiff's Supplement [Doc. No. 64] presents additional argument and responds to contentions in Defendant's reply brief, the filing constitutes a supplemental or surreply brief that was not authorized by the Court's Order [Doc. No.63], and is disregarded.

*See* Second Am. Compl. [Doc. No. 8], ¶ 6. Defendant seeks summary judgment on all claims based on Plaintiff's alleged failure to cooperate in an investigation of the insurance claim, which allegedly prevented Defendant from completing a coverage decision or an adjustment of the claim. Alternatively, Defendant contends it is entitled to summary judgment on Plaintiff's bad faith claim because the undisputed facts show Defendant acted reasonably in its investigation and denial of the insurance claim. Otherwise, Defendant seeks a determination as a matter of law of two issues regarding the amount of damages that Plaintiff can recover under the policy. Plaintiff denies that all relevant facts are undisputed and that summary judgment is proper on any claim or issue.

**Standard of Decision**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for either party. *Id*. at 255. All facts and reasonable inferences must be viewed in the light most favorable to the nonmovant. *Id*. If a party who would bear the burden of proof at trial lacks sufficient evidence on an essential element of its claim or defense, all other factual issues concerning the claim or defense become immaterial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant bears the burden of demonstrating the absence of a dispute of material fact warranting summary judgment. *Celotex*, 477 U.S. at 322-23. If the movant carries this burden, the nonmovant must then go beyond the pleadings and "set forth specific facts" that would be admissible in evidence and that show a genuine issue for trial. *See Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324; *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671; *see also* Fed. R. Civ. P. 56(c)(1)(A). "The court need consider only the cited materials, but may consider other materials in the record." *See* Fed. R. Civ. P. 56(c)(3). The Court's inquiry is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

## Statement of Undisputed Facts[2]

From August 20, 2012, until August 20, 2013, Plaintiff had property insurance coverage for 25 commercial properties under an insurance policy issued by Defendant to Charles A. Shadid, Charles A. Shadid LLC, and Charles A. Shadid Revocable Trust. Defendant received written notice of a property loss dated August 15, 2013; the notice

---

[2] This statement includes material facts that are properly supported and are not opposed in the manner required by Rule 56(c). It should be noted that Plaintiff responds to Defendant's statement of facts by opposing many paragraphs (and sometimes several paragraphs at once) with lengthy narrative statements, many of which span multiple pages. While some statements in these narratives are accompanied by citations to the record, many are not. This briefing practice is largely an effort by Plaintiff's counsel to argue his case, and is not helpful to the Court.

listed the date of loss as May 31, 2013, and described the loss as storm damage to one of the properties, Lakeshore Shopping Center.[3] On August 16, 2013, Defendant assigned the claim to Associated Claims Management, Inc. ("ACM") for field adjustment. Later in August 2013, Mr. Shadid indicated that he intended to inspect more insured properties and, if warranted, add other properties to the claim. On August 27, 2013, a representative of ACM notified Plaintiff that ACM would be scheduling inspections of all 25 properties and would be requesting information about prior claims, major repairs, and maintenance history for the properties. On August 30, 2013, ACM was notified by a public adjuster, Jerry Renfroe, that Plaintiff had hired him to handle the insurance claim, and a schedule for coordinating the property inspections was discussed.

ACM sent a letter to Mr. Shadid dated September 4, 2013, asking for information regarding the properties and damages resulting from the loss. The letter listed five items of information requested for each property: 1) specific repairs or repair estimates for the loss; 2) dates the properties were acquired; 3) major exterior repairs to roofs or siding during the past 10 years; 4) other insurance claims filed on the properties while they were under his care or control; and 5) a list of all property insurance policies covering the properties during the past 10 years. As to other claims, ACM directed Mr. Shadid "to

---

[3] Mr. Shadid denies submitting this notice; he has testified that he orally reported the loss to the agent who procured the policy within a few days after he observed hail damage to the subject property. Mr. Shadid also denies assigning the date of May 31, 2013, to the loss; he states in an affidavit that he did not know the date and someone else supplied it. *See* Shadid Aff. [Doc. No. 50-2], ¶ 3. However, Mr. Shadid testified in his deposition that he noticed the hail damage soon after the May 31, 2013 storm. *See* Shadid Dep. [Doc. No. 50-3], 124:10-13.

4

include claims #s, policy #s, and names of insurers, estimates, correspondence, and final settlement documentation." *See* Def.'s Ex. 8 [Doc. No. 39-8]. As support for these requests, ACM referred to a policy provision regarding an insured's duties in the event of a loss. On September 5, 2013, ACM and Mr. Renfroe agreed on dates for the property inspections to occur. On September 19, 2013, ACM asked Mr. Renfroe to provide documents regarding prior building repairs and insurance claims for Plaintiff's properties.

From September 23 through 26, 2013, ACM inspected all 25 properties. Plaintiff had previously made an insurance claim against a different insurer for a hailstorm loss in May 2010 involving many of the same properties. The inspections showed that some roofs had been only partially replaced and some roofs appeared to predate the 2010 hailstorm, and that there was preexisting hail damage to some rooftop components and equipment.

Mr. Shadid responded to ACM's written request for information by letter dated September 23, 2013.[4] Rather than addressing each numbered item in ACM's letter, Mr. Shadid provided a response to each duty listed in the policy provision. Within these responses, Mr. Shaded included a summary of repairs that had been made to each property after the loss, the cost of each repair, and a date and check number for the repair (primarily June 25-27 or August 2, 2013). Regarding an inventory of damaged property, Mr. Shadid stated: "Damages are being assessed at the present time with Insurer's adjuster, Ken Smith and Insured's public adjuster, Jerry Renfroe starting 9/23/2013." *See* Def.'s Ex. 15

---

[4] It is unclear from the record when ACM received the letter.

[Doc. No. 39-15] at 3 (ECF page numbering). Mr. Shadid supplemented this statement in a similar letter dated October 10, 2013 (Def.'s Ex. 16 [Doc. No. 39-16]), by providing an itemized repair estimate (Def.'s Ex. 17 [Doc. No. 39-17) prepared by the public adjuster. In Defendant's view, this estimate failed to account for pre-existing damage or partial repairs and wrongly included full replacement costs of all building roofs, rooftop components, heating and cooling units, and other structural components. In Plaintiff's view, the estimate accounted for non-covered items, such as pre-existing damage or wear and tear, as depreciation.

This initial volley was followed by a series of letters, first from ACM on November 4 and then from Defendant's counsel on November 22 and December 8, 2013, followed by Mr. Shadid's response on December 13, 2013. The letters concerned Defendant's requests for additional information and documents, and a request for an examination under oath ("EUO"). Defendant took Mr. Shadid's EUO on January 16, 2014. Among other things, Mr. Shadid stated that Plaintiff was involved in litigation regarding its 2010 insurance claim and that Plaintiff had filed other insurance claims regarding some of the properties. After the EUO, Defendant learned that Plaintiff had made another insurance claim related to hail damage in May 2012 that Defendant believed included some or all of the same properties involved in the May 2013 loss.

Beginning with a letter from Defendant's counsel to Plaintiff's counsel dated February 7, 2014, and a response from Plaintiff's counsel dated March 18, 2014, the parties began a discussion of Defendant's requests for documents and photographs related to the

2010 and 2012 insurance claims and documents regarding any major exterior repairs for the past 10 years. The discussion continued in letters exchanged between ACM and Mr. Shadid in April, May and June of 2014. Defendant generally took the position that this information was needed to evaluate the condition of the roofs before the May 2013 loss and to determine covered property damage. Plaintiff generally took the position that it had provided all relevant information and responsive documents (totaling more than 600 pages) and that Defendant's requests for additional materials were unreasonable and unjustified. Plaintiff also asserted that a confidentiality provision in its settlement agreement regarding the 2010 insurance claim prevented the disclosure of information regarding the amount of the 2010 loss, and Plaintiff made requests of ACM and Defendant for the production of documents generated or reviewed during the inspections and investigation of the May 2013 loss. In July 2014, however, Plaintiff's insurance agent provided a list of completed roof repairs for properties related to the 2010 insurance claim.

Defendant retained engineers to evaluate the damage to Plaintiff's properties related to the May 2013 loss. The engineers and ACM inspected the properties from May 5 to May 14, 2014. The engineers also researched hail events, and considered the repair information supplied by Plaintiff and its agent. The engineers prepared reports for each of Plaintiff's 25 properties and provided the reports to ACM, Defendant, and its counsel. By letter dated February 15, 2015, Defendant informed Plaintiff that it had concluded the claim investigation and had decided to deny the claim for the following reasons:

> Through its investigation, Aspen was unable to confirm that any property sustained hail damage on the reported date of loss. To the contrary,

> Aspen's investigation revealed that the properties sustained significant hail losses in the years prior to the inception of the Aspen policy. Indeed, we have learned that the insured asserted claims for damages sustained during these prior weather events, but has refused to disclose any information regarding the scope of the damage sustained to the properties citing a confidentiality agreement as a part of the settlement of the prior claims. Information provided by the insured regard [sic] the scope of roofing repairs was scant. Aspen was unable to determine the actual scope of roofing repairs associated with the prior weather events as a predicate to determining what portions of the properties may have been affected on the date of this claim. Moreover, historical weather data supports the conclusion that any hail associated with the May 31, 2013 weather event would have not been of significant size to cause damage to the properties. Accordingly, the claim is being denied for lack of sufficient evidence of the occurrence of a covered loss on May 31, 2013, and for lack of cooperation of the insured in providing information to substantiate the claim.

Def.'s Ex. 34 [Doc. No. 39-4] at 4 (ECF page numbering).

## Discussion

**A.     Insured's Failure to Cooperate in Investigating and Adjusting the Claim**

Defendant raises as a bar to recovery under the policy that Plaintiff breached a contractual obligation to cooperate in the investigation of the insurance claim. Defendant argues that it "was forced to deny the claim" because Plaintiff "refus[ed] to cooperate in the investigation" and failed to provide necessary information to determine coverage and adjust the claim. *See* Def.'s Mot. Summ. J. at 21. Plaintiff denies that it failed to cooperate or prevented Defendant from reaching a coverage decision.

"An insured . . . has an obligation to cooperate with the insurer, which is both contractual and implied in law." *First Bank of Turley v. Fid. & Deposit Ins. Co.*, 928 P.2d 298, 304 (Okla. 1996) (footnotes omitted). An insured's failure to cooperate is an affirmative defense in a breach of contract action against the insurer for payment due under

the policy. *See id*. at 304 n.21; *see also O'Neill v. Long*, 54 P.3d 109, 116 n. 11 (Okla. 2002). In addition to establishing a failure to cooperate, the insurer must show the insured's conduct "was prejudicial to its interest." *See O'Neill*, 54 P.3d at 116 n.11. "What constitutes lack of cooperation is a question of fact." *Iowa Home Mut. Cas. Co. v. Fulkerson*, 255 F.2d 242, 245 (10th Cir. 1958); *see State Farm Mut. Auto. Ins. Co. v. Koval*, 146 F.2d 118, 120 (10th Cir. 1944) ("Under the weight of authority, to constitute a breach of a cooperation clause by the insured, there must be a lack of cooperation in some substantial and material respect that results in prejudice to the insurer; whether there has been such a breach is a question of fact; and such a breach is an affirmative defense, the burden of establishing which rests on the insurer.").

Upon consideration of the facts shown by the summary judgment record, the Court finds that Defendant has not shown it is entitled to judgment as a matter of law on its defense of failure to cooperate. Defendant cites policy provisions requiring an insured to provide "a description of . . . the direct physical loss or damage," to permit an examination of the insured's "books and records," and to cooperate "in the investigation or settlement of the claim." *See* Def.'s Mot. [Doc. No. 39] at 15; Def.'s Ex. 2 [Doc. No. 39-2] at 27-28 (ECF page numbering). The facts on which Defendant relies to establish a breach of these duties, however, or a breach of the implied duty of cooperation, concern Defendant's demands for particular information it deemed necessary under its view of the issues raised by Plaintiff's prior losses and claims outside the policy period. Defendant does not explain why Plaintiff was obligated to provide information concerning the condition of the

insured properties before the policy period, which was presumably included in Defendant's underwriting of the policy or its initial assessment of the insured risk.

In short, Plaintiff has demonstrated genuine disputes of material facts regarding both its alleged lack of cooperation and prejudice to Defendant. Therefore, the Court finds summary judgment is inappropriate on this basis.

**B.     Bad Faith Claim**

Plaintiff claims Defendant engaged in bad faith by failing to conduct a timely and reasonable investigation and adjustment of the insurance claim, resulting in the denial of contractual benefits. Defendant asserts in support of its Motion that Plaintiff cannot establish bad faith because Defendant investigated and denied the claim to the best of its ability in light of Plaintiff's lack of cooperation and failure to provide adequate responses to Defendant's multiple requests for information and documents.

Under Oklahoma law, Defendant has an "'implied-in-law duty to act in good faith and deal fairly with the insured to ensure that the policy benefits are received.'" *Badillo v. Mid Century Ins. Co.*, 121 P.3d 1080, 1093 (Okla. 2005) (quoting *Christian v. Am. Home Assur. Co.*, 577 P.2d 899, 901 (Okla. 1977)); *accord Newport v. USAA*, 11 P.3d 190, 195 (Okla. 2000). "[A]n insurer's right to resist payment or resort to a judicial forum to resolve a legitimate dispute" is well-established. *Gov't Employees Ins. Co. v. Quine*, 264 P.3d 1245, 1249 (Okla. 2011); *see Ball v. Wilshire Ins. Co.*, 221 P.3d 717, 725 (Okla. 2009); *Brown v. Patel*, 157 P.3d 117, 126-27 (Okla. 2007). "However, when presented with a claim by its insured, an insurer 'must conduct an investigation reasonably

appropriate under the circumstances' and 'the claim must be paid promptly unless the insurer has a reasonable belief that the claim is legally or factually insufficient.'" *Newport*, 11 P.3d at 195 (quoting *Manis v. Hartford Fire Ins. Co.*, 681 P.2d 760, 762 (Okla. 1984)); *see Buzzard v. Farmers Ins. Co.*, 824 P.2d 1105, 1109 (Okla. 1991). An insurer's duty "to timely and properly investigate an insurance claim is intrinsic to an insurer's contractual duty to timely pay a valid claim." *Brown*, 157 P.3d at 122 (emphasis omitted). "'If there is conflicting evidence from which different inferences may be drawn regarding the reasonableness of [an] insurer's conduct, then what is reasonable is always a question to be determined by the trier of fact by a consideration of the circumstances in each case.'" *Newport*, 11 P.3d at 195 (quoting *McCorkle v. Great Atl. Ins. Co.*, 637 P.2d 583, 587 (Okla. 1981)); *accord Badillo*, 121 P.3d at 1093.

Upon consideration of the summary judgment record, viewed in the light most favorable to Plaintiff as required by Rule 56, the Court finds that a genuine dispute of material facts precludes summary judgment on the issue of bad faith conduct. Regardless whether the Court would reach the same conclusions, Plaintiff has presented minimally sufficient facts from which reasonable jurors could find that Defendant did not conduct a timely investigation and assessment of the damage to Plaintiff's properties that was appropriate under the circumstances, and that Defendant unreasonably denied the claim based on Plaintiff's alleged failure to cooperate in the investigation of the loss and failure to establish that a loss occurred during the policy period. In short, the reasonableness of

11

Defendant's conduct to ensure that Plaintiff received the benefits of its property insurance under the circumstances is reasonably subject to different conclusions.

Therefore, the Court finds that Plaintiff has demonstrated a genuine dispute of material fact regarding its bad faith claim, and that Defendant is not entitled summary judgment on this claim.

**C.     Contractual Damages Issues**

**1.     Losses Before the Effective Date of the Policy**

Defendant seeks a ruling that Plaintiff cannot recover damages for any loss that occurred before the effective date of the policy. It raises this issue on a hypothetical basis, without reference to any undisputed facts, based solely on language of the policy that provides coverage for a loss or damage commencing during the policy period. Defendant asks the Court to declare "that Aspen is not liable for any losses or damages that may be found at trial to have been sustained at [Plaintiff's] properties outside the policy period." *See* Def.'s Mot. at 26. The purpose of this proposed declaration is unclear. The Court declines to assume that an insured loss occurred and to issue an advisory ruling that is apparently directed at how to account for any prior damage and incomplete repair to a property in calculating the amount of Plaintiff's damages. "[F]ederal courts are not empowered to issue" advisory opinions. *McKinney v. Gannett Co.*, 694 F.2d 1240, 1247-48 (10th Cir. 1982) (citing *FCC v. Pacifica Found.*, 438 U.S. 726, (1978); *Herb v. Pitcairn*, 324 U.S. 117 (1945); *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227 (1937)).

## 2. Replacement Cost Coverage

Under a replacement cost provision of the policy, Plaintiff was entitled to payment for the cost to repair or replace the premises only upon completion of the repair or replacement; until that time, Plaintiff was entitled to receive the actual cash value of the damaged part of the property at the time of the loss. Without presenting any properly supported facts showing that Plaintiff sold a subject property before completing repairs to damage from a covered loss, Defendant seeks a declaration "that it is only liable for the actual cash value of that portion of the property the jury may determine to have been damaged as a result of the May 31, 2013 storm for those properties which [Plaintiff] has sold." *See* Def.'s Mot. at 27. The Court again declines to issue an advisory opinion.

## Conclusion

For these reasons, the Court finds that Defendant is not entitled to summary judgment on any claim or issue.

IT IS THEREFORE ORDERED that Defendant Aspen Specialty Insurance Company's Motion for Summary Judgment [Doc. No. 39] is DENIED.

IT IS FURTHER ORDERED that pursuant to the Order of August 3, 2016 [Doc. No. 47], the new deadline to complete discovery and file trial submissions is 30 days from the date of this Order.

IT IS SO ORDERED this 14th day of February, 2018.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE