IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

CHARLES A. SHADID, L.L.C.,              )
                                        )
                Plaintiff,              )
                                        )
vs.                                     )       Case No. CIV-15-595-D
                                        )
ASPEN SPECIALTY INSURANCE               )
COMPANY,                                )
                                        )
                Defendant.              )

# O R D E R

Currently pending before the Court for resolution is an outstanding issue raised by Plaintiff's Motion to Compel [Doc. No. 68] regarding Defendant's failure to produce unredacted documents from its insurance claim files, and two pages from its claims manual, based on claims of privilege for attorney-client communications and attorney work product. After a hearing and a ruling by the Court [Doc. No. 74], Defendant submitted the documents at issue for *in camera* review. The documents are generally listed on Defendant's privilege log. *See* Pl.'s Mot., Ex. 1 [Doc. No. 68-1].[1]

"The party seeking to assert a privilege has the burden of establishing its applicability." *Motley v. Marathon Oil Co.*, 71 F.3d 1547, 1550 (10th Cir. 1995); *accord In re Grand Jury Proceedings*, 616 F.3d 1172, 1183 (10th Cir. 2010). In this diversity case, Defendant's claim of attorney-client privilege is governed by Oklahoma law. *See*

---

[1] Some listed documents have been produced, or redaction issues were resolved by agreement of the parties.

*Seneca Ins. Co. v. W. Claims, Inc.*, 774 F.3d 1272, 1275 (10th Cir. 2014); Fed. R. Evid. 501. Oklahoma has codified its legal rules regarding the attorney-client privilege, which protects "confidential communications made for the purpose of facilitating the rendition of professional legal services to the client." Okla. Stat. tit. 12, § 2502(B). "'[T]he mere fact that an attorney was involved in a communication does not automatically render the communication subject to the attorney-client privilege; rather, the 'communication between a lawyer and client must relate to legal advice or strategy sought by the client.'" *In re Grand Jury Proceedings*, 616 F.3d at 1182 (quoting *Motley*, 71 F.3d at 1550-51; *United States v. Johnston*, 146 F.3d 785, 794 (10th Cir. 1998)).

In all federal court litigation, attorney work product is governed by Rule 26(b)(3) of the Federal Rules of Civil Procedure. *See Frontier Ref., Inc. v. Gorman-Rupp Co.*, 136 F.3d 695, 702 n.11 (10th Cir. 1998) ("Unlike the attorney client privilege, the work product privilege is governed, even in diversity cases, by a uniform federal standard embodied in Fed. R. Civ. P. 26(b)(3).") (internal quotation omitted). This rule generally protects from disclosure documents "prepared in anticipation of litigation or for trial" by a party's attorney or other representative. *See* Fed. R. Civ. P. 26(b)(3)(A). "Rule 26(b)(3) prevents discovery of an attorney's work product unless (1) the discovering party can demonstrate substantial need for the material and (2) the discovering party is unable to obtain the substantial equivalent of the material by other means without undue hardship." *Frontier Ref.*, 136 F.3d at 704 (footnote omitted). The rule provides additional protection for "the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. P. 26(b)(3)(B).

With these legal principles in mind, the Court has reviewed the documents produced by Defendant *in camera* and finds that Defendant has failed to establish its claims of privilege with respect to most of the documents in question. The redactions from the billing invoices of its field adjuster, Associated Claims Management, Inc. ("ACM"), the structured notes in its claims file, and communications between an attorney engaged to assist with processing Plaintiff's insurance claim (James Nader) and claim adjusters employed by Defendant or ACM regarding claim-specific tasks such as correspondence with Plaintiff, concern routine insurance business matters and not the rendition of professional legal services. Most of these communications occurred early in Defendant's claim investigation process, before it had received a properly completed proof of loss form or taken Plaintiff's examination under oath and while it was still collecting documents and information. During that time period, Mr. Nader's role was limited to insurance claim processing tasks, as stated in an engagement letter sent October 25, 2013 (0137-0138, 1314).[2] By Defendant's own account, it could not reach a determination regarding Plaintiff's claim without an engineering evaluation; the engineering reports were not delivered to and reviewed by ACM until October 2014.

_____

[2] Defendant characterizes Mr. Nader's work as legal services because its claims personnel decided to involve a lawyer in investigating Plaintiff's claim under the circumstances. Defendant points out that Plaintiff's representative, Charles Shadid, is a lawyer; that Plaintiff had been involved in claim litigation in the past; and that Plaintiff's letters from Mr. Shadid were similar to legal correspondence, quoting policy language and containing legal disclaimers. *See* Def.'s Resp. Br. [Doc. No. 71] at 17-18. Defendant specifically relies on Mr. Shadid's letter dated October 10, 2013, as leading to a reasonable conclusion that the claim was headed toward litigation and it should engage legal services. *See* Def.'s Ex. 8 [Doc. No. 71-8]. However, Mr. Shadid's letter was a response to an earlier letter from ACM, and merely includes the same policy language and disclaimers stated in ACM's letter. *See* Def.'s Mot. Summ. J., Ex. 8 [Doc. No. 39-8]. He had earlier sent a similar letter. *See id*. Ex. 15 [Doc. No. 39-15].

The Court also finds, however, that one page of withheld correspondence (2028) does contain a request for Mr. Nader's advice on a particular legal issue and his response, and a letter from Mr. Nader to Jonna Holm dated March 31, 2014 (2196-98) contains legal analysis and advice. These pages constitute confidential attorney-client communications and are protected.

The Court further finds that the two pages of Defendant's claims manual at issue (3073-74) reflect Defendant's policy and guidelines regarding litigation generally, and bad faith litigation specifically, and constitute attorney work product. This portion of the claims manual was prepared in anticipation of litigation; "work product protection is [not] confined to materials specifically prepared for the litigation in which it is sought." *Frontier Ref.*, 136 F.3d at 703; *see F.T.C. v. Grolier Inc.*, 462 U.S. 19, 25 (1983) ("[T]he literal language of the Rule protects materials prepared for any litigation or trial as long as they were prepared by or for a party to the subsequent litigation."). Plaintiff has not demonstrated a substantial need for this material, and therefore, it need not be produced.

IT IS THEREFORE ORDERED that Defendant shall produce to Plaintiff within 14 days from the date of this Order, unredacted copies of the documents produced *in camera*, except the documents identified *supra* as containing privileged communications or work product (2028, 2196-98 and 3073-74).[3]

---

[3] Defendant's production should total 72 pages of documents.

IT IS SO ORDERED this 16th day of February, 2018.

TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE